**In the Matter of LA DIFFERENCE RESTAURANT, INC. f/k/a Cafe Elegante, Inc. Debtor.**

**Nos. 83 Civ. 3946 (JFK), 76 B 1208 (EJR).**

United States District Court, S.D. New York.

July 15, 1986.

Rudolph Giuliani, U.S. Atty. for the Southern District of N.Y., New York City (Alan Nisselson, Asst. U.S. Atty., of counsel), for appellant I.R.S.

Finkel, Goldstein & Berzow, New York City (Harold S. Berzow, of counsel), for appellee, La Difference.

## OPINION AND ORDER

KEENAN, District Judge:

Before the Court is an appeal by the Internal Revenue Service ("IRS") from a decision and order of the United States Bankruptcy Court for the Southern District of New York, Edward J. Ryan, dated April 8, 1983. *In the Matter of La Difference Restaurant, Inc.*, 29 B.R. 178 (Bankr.S.D. N.Y.1983) ("the slip opinion"). In his decision, Judge Ryan estopped the IRS from seeking to collect taxes, interest and penalties allegedly owed by debtor-plaintiff La Difference Restaurant, Inc. ("La Difference"), and enjoined the IRS from seeking to enforce its alleged claim against La Difference.

The facts of the case are set forth in the slip opinion. On or about May 19, 1976, the day after new management had acquired control of La Difference, it filed a Chapter XI petition for bankruptcy reorganization in the Southern District of New York. Over the next years, the IRS submitted four proofs of claim, each of which superseded that which had previously been filed. (IRS Appendix, A29–35) ("App."). The first proof of claim, # 56, was dated August 9, 1976. It sought $66,102.42, of which $16,626.70 was for withholding tax and FICA tax for the tax period ending June 30, 1976. (App. A29). Upon objection by La Difference, the IRS amended its claim, and filed a proof of claim, # 75, on January 27, 1977, which stated that it was "amending and superseding" the August 9, 1976 proof of claim. (App. A31). According to the slip opinion, and confirmed through reference to the proof of claim, itself, # 75 "did not assert a claim for withholding and FICA taxes" for the period ending June 30, 1976. The second proof of claim asserted tax liability of $51,513.68. 29 B.R. at 179, n. 1.

Two subsequent proofs of claim were filed by the IRS on March 4, 1977, and on December 27, 1977. These two proofs of claim were numbered 79 and 94, and sought $50,867.76 and $42,003.93, respectively. (App. A33 and A35). Each superseding proof of claim reduced the debtor's tax liability.

On August 13, 1979, the parties to this action entered into a stipulation which, among other things, fixed the debtor's liability for federal tax at $42,003.93 and set forth a schedule for payment of the taxes. ("the stipulation"). La Difference paid the IRS $15,000 as a cash deposit at the time of the confirmation of the debtor's Plan of Arrangement, which occurred on December 14, 1979. La Difference was to pay the IRS approximately $1,125 each month for 24 months, pursuant to the stipulation. (App. A22).

The August 1979 stipulation contained the following clause at § 5:

> If additional federal taxes and statutory additions which have not been claimed prior to confirmation of a plan of arrangement are determined to be due from the debtor, they will be paid in full by the debtor immediately after notice. However, the appropriate District Director may permit the additional taxes and statutory additions to be paid in installments.

(App. A24). Thus, the Plan of Arrangement, confirmed on December 14, 1979, "was predicated upon the effectiveness of the stipulation with the IRS. In reliance on the aforesaid [stipulation], La Difference confirmed [the] Plan of Arrangement with its creditors." 29 B.R. at 180.

On May 6, 1982, a full two and a half years after the confirmation of the Plan of Arrangement, and only three months shy of three years from the date of the stipulation between debtor and the IRS fixing La Difference's tax liability, the IRS notified the debtor that an additional $21,553.24 was owing for the period ending June 30,

1976. The sum represented $12,479.98 for withholding and FICA taxes up to June 30, 1976, and accumulated interest of $6,125.34. The total also included an accumulated penalty of $2,927.92. (together, "statutory additions"). 29 B.R. at 180, n. 2.

La Difference moved by order to show cause on July 21, 1982 for a declaratory decree stating that it did not owe the IRS "taxes, interest or penalty" for the period ending June 30, 1976, and enjoining IRS attempts to enforce such claim. (App. A1). After a hearing on September 30, 1982, the parties submitted stipulated facts and conclusions of law to the bankruptcy judge. (App. A33 and A44). On April 8, 1983, Judge Ryan issued the opinion and order referred to herein as the slip opinion.

Judge Ryan ruled on two separate points asserted by La Difference. First, he held that the claim for statutory additions had not been discharged by the provisions of the confirmation order or by the Bankruptcy Act. Citing to *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), which relied upon § 17 of the Bankruptcy Act, Judge Ryan stated that "the United States Supreme Court has held that a debtor's personal liability for post-petition interest on unpaid taxes is not changed by the bankruptcy proceedings."[1] Judge Ryan held that "[i]t is settled law that the bankruptcy proceedings will not dispose of interest and penalties on federal tax claims. *In re Jaylaw Drug, Inc.*, 621 F.2d 524 (2d Cir.1980)." 29 B.R. at 180. The IRS is not appealing this portion of Judge Ryan's decision, and the Court need not review the holding.

The IRS does appeal, however, from Judge Ryan's ruling regarding the second argument made by La Difference. This second point, as restated by Judge Ryan, was that the IRS was:

equitably estopped from asserting a deficiency for the tax period which was included in its original proof of claim, but

which was omitted from a superseding claim, and which superseding claim formed the basis of an agreement which the debtor relied upon in confirming a plan of arrangement with creditors.

29 B.R. at 180. Judge Ryan concluded, after extended analysis, that "by any standard of equity and fairness, the Government is estopped in this case from claiming that the debtor-taxpayer owes this additional tax and from taking any measure to enforce said claim." 29 B.R. at 183.

The IRS appeals from this second determination. It frames the issues as follows:

1. Whether the bankruptcy court erred in estopping the IRS from attempting to collect taxes and statutory additions?

2. Whether the bankruptcy court erred in enjoining the IRS from the collection of taxes?

La Difference, of course, argues that the decision of Judge Ryan on both these issues was correct, and that this Court should affirm the ruling of the bankruptcy court. As discussed below, the Court affirms the decision of the bankruptcy court.

## DISCUSSION

 A reviewing court is bound to accept the factual findings of a bankruptcy court unless they are "clearly erroneous." Bankruptcy Rule 8013; *In re Berke*, 350 F.Supp. 326, 328 (E.D.N.Y.1972), *aff'd*, 478 F.2d 1397 (1973). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1947). The presumption of correctness afforded factual findings does not apply to determinations of legal issues, however. A court sitting in review of legal conclusions must independently determine the correctness of the bankruptcy judge's determinations. *In re*

---

1. Original section 17 of the Bankruptcy Act became former section 11 U.S.C. § 35. It is now substantially subsumed into 11 U.S.C. § 523.

*Dejay Stores, Inc.*, 220 F.Supp. 497, 500 (S.D.N.Y.1963). As Judge Friendly of the Court of Appeals for the Second Circuit stated:

> when the issue is a [lower court's] application of a legal standard to facts undisputed or reasonably found, reversal is not limited to results that are clearly erroneous; it is enough that the appellate court should be convinced ... that the result does not jibe with the applicable rule of law.

*In re Hygrade Envelope Corp.*, 366 F.2d 584, 588 (2d Cir.1966). Where an issue raised on a bankruptcy appeal challenges only legal conclusions, and not findings of fact, the district court must rely on the facts as already found by the bankruptcy court in independently determining the accuracy of the bankruptcy court's determinations of law. *In re Cricker*, 46 B.R. 229 (N.D.Ind.1985); *In re C.J. Dick Towing Co.*, 161 F.Supp. 751 (S.D.Tex.1958), *aff'd*, 267 F.2d 374 (5th Cir.1959). The *Dick Towing* court, indeed, stated that even when the Government, on a tax claim, did not complain about a missing, or improper factual finding made by a bankruptcy referee, the referee's findings of fact "must be treated as unassailable." *In re C.J. Dick Towing*, 161 F.Supp. at 752.

On this appeal by the IRS, two legal conclusions of Judge Ryan are directly challenged. The issues presented by the IRS, relate to the application of law, for the most part.[2] Thus, while "independently" determining the appropriateness of Judge Ryan's legal conclusions, this Court considers itself bound to accept the unchallenged factual findings of the bankruptcy court.

### A. Injunctive Relief

The IRS argues that the Anti-Injunction Act ("the Act") 26 U.S.C. § 7421(a) prohibits courts from deciding cases which would interfere with the collection of taxes. Accordingly, the IRS urges, Judge Ryan erred in enjoining the IRS from proceeding

with the May 1982 claim against La Difference. Section 7421(a) states:

> no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The IRS' view is that Section 7421(a), if applied properly, would have prevented Judge Ryan from estopping the claim against the IRS.

La Difference argues that the IRS has waived its right to object to the imposition of the injunction by Judge Ryan by failing to raise this issue at the bankruptcy proceedings. Moreover, La Difference urges that the Act, in any case, does not apply to the case at bar.

 As a preliminary matter, the Court will consider La Difference's claim of waiver. In a word, the Court finds La Difference's claim uncompelling. The effect of the Anti-Injunction Act, § 7421(a) is "to deprive [ ] the District Court of jurisdiction to issue ... injunctive relief." *Bob Jones University v. Simon*, 416 U.S. 725, 749, 94 S.Ct. 2038, 2052, 40 L.Ed.2d 496 (1974). Although certain claims may be lost if not raised at the level of fact-finding, purely legal questions going to the subject of a court's power to hear and decide a matter may be raised at any point in litigation. Relying on similar facts involving the allegedly untimely filing by the IRS of an appellate brief asserting the applicability of the Act, a bankruptcy judge observed that "the issue of subject matter jurisdiction may be raised at any time." *In re Mohawk Industries*, 55 B.R. 284, 290 (Bankr.D. Mass.1985). This Court concurs. The applicability of the Anti-Injunction Act raises an issue of subject matter jurisdiction, and therefore is a point which cannot be waived. *See Enochs v. Williams Packing*, 370 U.S. 1, 5, 82 S.Ct. 1125, 1128, 8 L.Ed.2d 292 (1962). No waiver of a point going to the very question of a court's power to

---

2. The IRS challenges a few factual findings, *see infra* at 827, 828; However, these challenges are not expressly made.

hear a matter can occur. The effect of the Act on this bankruptcy claim is properly raised at this juncture in the litigation.

The Court thus proceeds to the merits of this issue: whether the Anti-Injunction Act bars a bankruptcy court, or appellate bankruptcy court, from issuing injunctions against the IRS, in the context of a tax proceeding. This very specific question has been the subject of much discussion in recent years. In *Bob Jones University v. Simon,* 416 U.S. 725, 736–37, 94 S.Ct. 2038, 2045–46, 4 L.Ed.2d 496 (1974) the Supreme Court stated that the Anti-Injunction Act "could scarcely be more explicit," in depriving all courts, federal and state, of subject matter jurisdiction over suits which challenge tax collection or assessment by the IRS. *Enochs v. Williams Packing, supra.* Nevertheless, *Bob Jones,* and the earlier Supreme Court decision, *Enochs,* originally defined a narrow exception to the Act, in addition to those contained in the statute itself, none of which apply to the instant action. The case-law created exception after *Enochs-Bob Jones* was as follows:

> [o]nly upon proof of the presence of two factors [can] the literal terms of § 7421(a) be avoided: first, irreparable injury, the essential prerequisite for injunctive relief in any case; and second, certainty of success on the merits.

*Bob Jones* 416 U.S. at 737, 94 S.Ct. at 2046. The Court further addressed the question of irreparable harm, stating that no exception to the Act arose "merely because collection would cause irreparable injury, such as the ruination of the taxpayer's enterprise." *Bob Jones* at 745, 94 S.Ct. at 2050 (citations omitted).

In a later Supreme Court case this narrow exception was extended, perhaps so as to "overrule that decision." *In re Dore and Associates Contracting, Inc.,* 45 B.R. 758, 760 (Bankr.E.D.Mich.1985). The more expansive exception was formulated in *South Carolina v. Regan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). There, the Court held that the *Enochs-Bob Jones* rule did not apply where "Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy" or an "alternative legal avenue by which to contest the legality of a particular tax," such as through a refund suit. *South Carolina v. Regan* 465 U.S. at 378, 373, 104 S.Ct. at 1114, 1111.

After *South Carolina,* therefore, the inquiry has been held to be that:

> the scope of the Anti-Injunction Act was intended to parallel that of the familiar maxim of equity jurisprudence that one must show the unavailability of any remedies at law before one may petition for equitable relief. The Act prohibits courts from exercising their equitable power to enjoin whenever the taxpayer may utilize other remedies such as refund suits; at the same time, it does not prevent injured parties from seeking equitable relief in appropriate situations, nor does it withdraw from courts the jurisdiction to provide that relief when justice so requires. Therefore, once a party has persuaded a court that equity jurisdiction exists, the decision of whether to grant a preliminary injunction should be made according to normal standards governing the issuance of such relief.

*In re Dore* at 762. Thus, if no adequate legal remedy, such as a refund action, is available to La Difference, the Court can proceed to apply the "normal standards governing the issuance" of preliminary injunctions. No reference to *Enochs-Bob Jones* is any longer required.

One further line of analysis must be followed in the bankruptcy litigation now before the Court. Two Courts of Appeals, that of the Eighth and of the Third Circuit, have split on the issue of whether a bankruptcy court in particular can enjoin the collection of taxes despite the broad sweep of § 7421(a) when a taxpayer is involved in bankruptcy proceedings. In *Bostwick v. United States,* 521 F.2d 741 (8th Cir.1975), the Court of Appeals for the Eighth Circuit decided that in passing the Anti-Injunction Act, Congress had not indicated that it

intended to override the principles of the bankruptcy laws. The court stated:

> We believe that the overriding policy of the Bankruptcy Act is the rehabilitation of the debtor and we are convinced that the Bankruptcy Court must have the power to enjoin the assessment and/or collection of taxes in order to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act.

*Bostwick* at 744. This policy argument was adopted by numerous other courts in subsequent decisions. *See e.g., In the Matter of A & B Heating and Air Conditioning, Inc.,* 48 B.R. 401 (Bankr.M.D.Fla. 1985); *In re Steel Products, Inc.,* 47 B.R. 44 (Bankr.W.D.Wash.1984); *In re the Original Wild West Foods, Inc.,* 45 B.R. 202 (Bankr.W.D.Tex.1984), and citations therein, all of which hold that a bankruptcy court has jurisdiction to enjoin the IRS from collecting on claims filed against a bankrupt entity, despite the dictates of the Anti-Injunction Act.

The Third Circuit Court of Appeals decided the conflict in converse fashion. In *In the Matter of Becker's Motor Transportation,* 632 F.2d 242 (3rd Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981), the Third Circuit held that:

> we believe that a bankruptcy court exemption [to § 7421(a)] cannot be judicially fashioned without contravening congressional intent. Although there may be some merit in permitting the policy behind the Bankruptcy Act to outweigh the rationale that underpins the anti-injunction legislation, such argument should be addressed to Congress.

*Becker's* at 246. This reasoning has been adopted by numerous other courts, too, including *In re Arrow Transfer and Storage Co.,* 50 B.R. 726 (E.D.Tenn.1985); *In the Matter of Driscoll's Towing Service, Inc.,* 51 B.R. 990 (S.D.Fla.1985); *United States v. Rayson Sports, Inc.,* 44 B.R. 280 (N.D. Ill.1984).

One court has resolved the split in the circuits by concluding that "a case by case determination of whether equity and the common good require such an injunction" should dictate the applicability of the Anti-Injunction Act. *In re Datair Systems Corp.,* 37 B.R. 690, 696 (Bankr.N.D.Ill. 1983). *See also In re Mohawk Industries, Inc.,* 55 B.R. 284, 290 (Bankr.D.Mass.1985). *Mohawk* advocated a case by case approach, but denied an injunction against IRS for failure to show likelihood of success on merits. This Court, also, will adopt the case by case approach.

■ On the facts of this case, specifically, the length of time which the IRS let pass before reasserting its withdrawn claim, and the assumption of control of the company by La Difference's new management only the day before the bankruptcy petition was filed, equity and the common good dictate that this Court follow the *Bostwick* line of cases. Indeed, it appears to this Court, as it has to others, that the "restoration and maintenance of a viable, tax-paying corporation economically benefits the entire economic community, not just the individual debtor." *Datair* at 696. Thus, the "common good" as well as equity dictate that the Court should proceed under its equitable jurisdiction even in the face of the Anti-Injunction Act.

Moreover, under the *South Carolina v. Regan* analysis, La Difference has no alternative remedy than the route of equitable relief. Plaintiff's whole plea hinges on the claim that the IRS should be estopped from collecting on its claim because of unfairness, loss in reliance, and other equitable doctrines. Nowhere does La Difference contest the amount or basic validity of the May 1982 claim under the Tax Code. A refund suit would therefore not satisfy La Difference's prayer for relief. "Payment ... by [La Difference] followed by a refund suit arguably would be an inadequate remedy." *Mohawk* at 290. The Court finds that La Difference clears the first hurdle toward its goal of injunctive relief.

Having properly invoked the equity jurisdiction of the Court as directed by the rule

of *South Carolina v. Regan,* and by the bankruptcy exception to the Anti-Injunction Act created by the *Bostwick* line of cases, the Court proceeds to the merits of La Difference's claim for equitable estoppel of the May 1982 claim.

## B. Equitable Estoppel

Of vital importance on this portion of the motion are certain of the bankruptcy court's "unassailable" factual findings, upon which rest Judge Ryan's legal conclusions. For example, Judge Ryan rested his conclusion that the doctrine of equitable estoppel could be applied in favor of La Difference, and against the Government, on the facts as described by the IRS, that:

First, ... this case involved a voluntary agreement between the parties which was binding on the Government. Second, ... the representation relied upon was ... in writing. Finally, the debtor here relied and took action upon the written representations of the IRS and "could not now rectify the harm that would be caused by the Government's reinstatement of its claim."

IRS Memo in Support at 12, n. "* * *", quoting slip opinion at 11–12.

Based upon these findings, and others, Judge Ryan applied the standards for equitable estoppel as set forth in *Tonkonogy v. United States,* 417 F.Supp. 78, 79 (S.D. N.Y.1976), and concluded that estoppel barred the IRS from collecting the "statutory additions." The *Tonkonogy* factors are:

(1) a misrepresentation by an agent of the United States acting within the apparent scope of his duties; (2) the absence of contrary knowledge by the taxpayer in circumstances where he may reasonably act in reliance; (3) actual reliance; (4) detriment; and (5) a factual context in which the absence of equitable relief would be unconscionable.

*Tonkonogy* at 79 (footnote omitted). If these factors are satisfied in the instant case, then estoppel is appropriate.

The IRS argues that the *Tonkonogy* case represented an anomalous divergence from the mainstream of the Second Circuit's law on the question of equitable estoppel against the Government, which was rectified in *New York Athletic Supply Co., Inc. v. United States,* 450 F.Supp. 469, 471 (S.D. N.Y.1978). *Athletic Supply* set forth the generalization that estoppel is not often invoked to bind the United States, and then acknowledged that:

although there has been some slight erosion in recent years of this formerly iron-clad rule, this development has been limited to well-defined situations not like the one presented here. And even this limited relaxation of the traditional position is largely a trend of the Court of Appeals for the Ninth Circuit which has not been followed by the Second Circuit.

450 F.Supp. at 471 (citations omitted).

While the Ninth Circuit has perhaps led the field in allowing equitable estoppel against the Government, including the IRS, this is not to say that other courts have not applied it, as well. In *Simmons v. United States,* 308 F.2d 938 (5th Cir.1962) the Court of Appeals for the Fifth Circuit applied the doctrine against the Government, stating that "[i]t is well settled that the doctrine of equitable estoppel, in proper circumstances, and with appropriate caution, may be invoked against the United States in cases involving internal revenue taxation." *Simmons* at 945. Especially in bankruptcy proceedings, courts have invoked the doctrine of equitable estoppel to prevent additional tax claims from being made against taxpayers. *See e.g. McKenzie v. United States,* 536 F.2d 726 (7th Cir.1976); *In re Aristo Foods, Inc.,* 3 B.C.D. 476 (Bankr. W.D.Mo.1977); *aff'd,* 3 B.C.D. 869 (W.D.Mo.1977); *aff'd,* 582 F.2d 1288 (8th Cir.1978). In the Second Circuit, it has been recognized that the doctrine of equitable estoppel may, in some special cases, be applied against the Government or IRS. In *Goldberg v. Weinberger,* 546 F.2d 477 (2d Cir.1976), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977), the Court of Appeals for the Second Circuit stated that:

[i]t is well established that "estoppel cannot be set up against the Government on the basis of an unauthorized representation or act of an officer or employee who is without authority in his individual capacity to bind the Government."

*Goldberg* at 480–81 (citations omitted). Thus, the court denied the plaintiff's application for estoppel on the specific ground that the Government agent upon whose representation plaintiff detrimentally relied was not authorized to make the subject representation. The Circuit Court implicitly acknowledged, however, that in other cases, such as when the Government agent was in fact acting within the scope of his authority and caused a taxpayer to rely on misrepresentations, equitable estoppel against a Government agency would be called for.

In *Board of Education v. Harris,* 622 F.2d 599 (2d Cir.1979), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981), the Second Circuit expressly avoided the doctrine of equitable estoppel as a basis for its decision, stating that "the law in this Circuit is unsettled." *Board of Education* at 608. Nevertheless, in dictum, the Second Circuit stated that:

> [a]n estoppel in this circumstance would require a misrepresentation by an agent of the federal government made within the scope of his authority which was justifiably relied upon by the appellee to his detriment thereby making the denial of equitable relief unconscionable, *see generally, New York Athletic Supply Co., Inc. v. United States,* 450 F.Supp. 469, 471 (S.D.N.Y.1978); *Tonkonogy v. United States,* 417 F.Supp. 78, 79 (S.D.N.Y.1976).

It is evident that even the Second Circuit has recognized the applicability of equitable estoppel to situations in which an agent of a Government agency, acting within the scope of his individual authority, caused justifiable and detrimental reliance on the part of an individual citizen.

Having determined independently that the bankruptcy court did not err as a general matter in allowing equitable estoppel to be applied against the Government, this Court turns to the specific case before it. Applying the *Tonkonogy* exposition to the facts of this case, as found by Judge Ryan, the Court determines that the legal conclusions reached by the bankruptcy court are correct.

In *Tonkonogy,* Judge Owen of this court considered a situation in which a taxpayer reasonably relied upon a letter from the IRS apparently extending the deadline for the time of tax payments, only to be informed that he was in default on the basis of a late payment. Judge Owen said that:

> The general rule is that equitable estoppel is not applicable against the government regardless of the actions of its agents. However, the rule is not without exception. With respect to the IRS, equitable estoppel is appropriate under certain limited circumstances.

*Tonkonogy* at 79 (footnotes omitted). He then proceeded to set forth the five factors constituting grounds for equitable estoppel, quoted *supra* at 826. After analyzing the facts before him in terms of the five points, Judge Owen applied equitable estoppel against the IRS.

This Court will evaluate each of the five *Tonkonogy* factors with respect to the facts of the instant case.

1. **"A misrepresentation by an agent of the United States acting within the apparent scope of his duties."**

The IRS does not claim in the instant case that the "representation made (the stipulation) was unauthorized." 29 B.R. 183. This case is thereby distinguishable from *Goldberg, supra* at 827. The IRS' agent in the instant case was acting within the apparent scope of his duties when he made the "misrepresentation."

The IRS asserts that no misrepresentation was made. It argues that § 5 of the stipulation entered into by La Difference and the IRS preserved the rights of the IRS and:

> specifically provided ... that if additional taxes and statutory additions were found

to be owing, La Difference had the obligation to make immediate payment to the IRS or on some other basis as determined by the IRS.

IRS Memo in Support at 15.

Reference to § 5 of the stipulation suggests that the critical language is that which reads:

> [i]f additional federal taxes and statutory additions *which have not been claimed prior to confirmation of a plan of arrangement* are determined to be due from a debtor, they will be paid in full by the debtor immediately after notice.

(emphasis added). In Judge Ryan's analysis of the facts, the above-underlined phrase indicated that the May 1982 claim made by the IRS was excluded from those which were allowably recoverable by the force and effect of § 5 after the confirmation of the Plan of Arrangement. According to Judge Ryan:

> The debtor asserts that since the IRS was aware of the claim for the taxes in question and since it included the tax period in its first proof of claim, it is not "a claim which was not claimed prior to the confirmation", but an effort to revive a withdrawn claim. Under the present factual circumstances, this court agrees with that line of reasoning.

29 B.R. at 181.

In other words, Judge Ryan found that § 5 of the stipulation did not cover the taxes which had been assessed in the first proof of claim for the period up to June 30, 1976, and which were then withdrawn by effect of the amending and superseding proofs of claim. According to Judge Ryan, since the claim had been previously filed, it could not be counted among those described in § 5 as "federal taxes and statutory additions which had not been claimed"

prior to the confirmation of the Plan of Arrangement.

This Court is convinced that Judge Ryan's factual determination regarding the inapplicability of § 5 to the May 1982 claim is not "clearly erroneous". While the IRS urges that its final proof of claim superseded all prior claims and thereby nullified the legal significance of the earlier claims so that they could no longer be considered as having been claimed prior to the confirmation, the Court is not persuaded. Recognition that the original proof of claim, which covered the period through June 30, 1976 was superseded, does not alter the fact that the claim was at one time made, and made prior to the confirmation of the Plan of Arrangement. This Court does not find that Judge Ryan's statement that the May 1982 claim was "an effort to revive a withdrawn claim" was erroneous.[3]

■ The Court affirms the finding that the May 1982 claim was not one which was preserved by the terms of § 5 of the stipulation. Since the May 1982 claim was not an exception to the stipulation's general statement that La Difference's tax liability was fixed at $42,003.93, the IRS, in the stipulation, misrepresented the amount of the debtor's liability. Thus, the first component of the *Tonkonogy* test has been satisfied.

2. **"The absence of contrary knowledge by the taxpayer in circumstances where he may reasonably act in reliance."**

■ The IRS argues that La Difference could not have reasonably relied on the stipulation as a statement of the "final" amount of taxes owed, because of the provisions of § 5 which suggested that further claims might be made. In addition, the IRS states that while the IRS may perhaps

---

3. The Court does not accept the IRS' reading of § 5 as a legal matter, either. The IRS drafted § 5 as well as the rest of the stipulation. Thus, ambiguities in its language must be interpreted in favor of the non-drafting party, La Difference. *See Semmes Motors Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1207 (2d Cir.1970). The IRS argues that La Difference's reading of § 5 is wholly unreasonable, and therefore, should not be given credence even in light of *Semmes'* bias on interpretation. To the contrary, this Court finds, as Judge Ryan did, that La Difference's reading of § 5 is more than reasonable, and should be accepted, particularly in the face of the rule of *Semmes*.

have been negligent in failing to include the full amount of tax in its final proof of claim, it made no "affirmative misrepresentations." Therefore, it argues, equitable estoppel against it, a Government agency, is unavailable. *United States v. RePass,* 688 F.2d 154, 158 (2d Cir.1982).

In addition, citing *Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981), the IRS urges that even affirmative misconduct may be an insufficient basis for estopping the Government.

The *Schweiker* case, in which estoppel was not invoked, can be distinguished from the instant case in a number of ways, including the fact that the Government agency in *Schweiker* made only oral misrepresentations to a claimant which were not of binding legal effect, the harm of which was found to be remediable. In the present case, as Judge Ryan observed in his factual findings, the misrepresentation was in writing, of binding legal effect, and, most germane to this second point of the *Tonkonogy* investigation:

> the debtor herein relied and took action upon the written representation of the IRS and could not now rectify the harm that would be caused by the Government's reinstatement of its claim.

29 B.R. at 183. Thus, the finding that *Schweiker* did not control the outcome of the instant proceedings was not clearly erroneous.[4]

Judge Ryan further found that La Difference, the "taxpayer",

> reasonably assumed upon execution of the stipulation, that he could arrange a plan with his creditors for the settlement of his debts. Thus, instead of arranging to make payment predicated upon tax claims, including the $12,479.98 charge, it predicated its arrangement upon a lesser stipulated figure. Had the debtor been aware of the additional tax owing, it

would have presented an entirely different plan to the creditors.... The debtor's new management had no contrary knowledge upon which to base a belief that the stipulated amount was not final, or to indicate that it could not act with reliance upon the agreed upon sum. The feasibility of the debtor's plan with creditors was made in reliance upon the agreement.

29 B.R. at 183. Judge Ryan, in so many words, found that because the new buyers of La Difference had no basis for suspicion as to the finality of the stipulation, it was reasonable for them to presume that the legally binding stipulation was the ultimate statement of liability, and to proceed on that premise. Based upon the factual finding that the debtor's management, who acquired control of the company the day before the Chapter XI petition was filed, was unaware of the extent of liability for payroll taxes due the IRS, the conclusion that reliance was reasonable, and not undermined by contrary knowledge, was logical. The Court will not reverse the finding of Judge Ryan on this point. The second of the five *Tonkonogy* factors is satisfied.

### 3. "Actual reliance."

As discussed above, Judge Ryan found, again as a question of fact, that "instead of arranging to make payment predicated upon tax claims, including the $12,479.98 charge, it predicated its arrangement upon a lesser stipulated figure.... The feasibility of the debtor's plan with creditors was made in reliance upon the agreement." 29 B.R. at 183. Similarly, Judge Ryan found that "[t]he feasibility of the debtor's Plan was predicated upon the effectiveness of the stipulation with the IRS. In reliance upon the aforesaid agreement, La Difference confirmed a Plan of Arrangement with its creditors." 29 B.R. at 179–80.

---

**4.** As to the IRS' assertion that the *Schweiker* Court "stated that even 'affirmative misconduct' may be an insufficient basis for which to estop the Government," Memo at 11, this Court finds this to be an inaccurate representation of the *Schweiker* holding. The *Schweiker* Court stated that it was "convinced that the [Government

agent's] conduct—which the majority conceded to be less than 'affirmative misconduct'—does not justify the abnegation of [a] duty." *Schweiker* 450 U.S. at 788–89, 101 S.Ct. at 1470–71. The Court thus declined to reach the issue of what the effect of an affirmative misconduct might be.

The finding of actual reliance on the figure set forth in the stipulation is far from "clearly erroneous." This Court concludes that Judge Ryan's finding, indeed, was reasonable and perhaps the only appropriate one.

### 4. "Detriment."

 Judge Ryan concluded his opinion with the finding that "[i]f the Government is allowed to invalidate such reliance, the creditors' and the debtor's rights will be unjustly impaired." 29 B.R. at 183. This Court agrees. La Difference changed its position on the basis of the assurances in the stipulation. It made decisions regarding its ability to pay the creditors in the Plan of Arrangement based upon the written representation in the stipulation, which it might not otherwise have made. The Plan of Arrangement created legal obligations which could not be readily undone, so that, in Judge Ryan's words, La Difference "could not now rectify the harm that would be caused by the Government's reinstatement of its claim." 29 B.R. at 183. The rights of La Difference and the bankruptcy creditors would be infringed if the withdrawn claim was allowed to proceed. As Judge Ryan found, La Difference would experience a detriment if the claim of May 1982 is allowed to go forward.

### 5. "A factual context in which the absence of equitable relief would be unconscionable."

Again, adopting the not "clearly erroneous" findings of Judge Ryan as its own, the Court determines that "the debtor's equitable interest is so compelling and the loss which it would sustain so unwarranted that estoppel is justified against the IRS with respect to its $21,533.14 claim." 29 B.R. at 183. The amalgam of the first four *Tonkonogy* factors creates a factual context which compels the imposition of equitable relief.

All five *Tonkonogy* factors having been satisfied, and as a matter of law, and where appropriate, relying on the factual findings of Judge Ryan, which were not clearly erroneous, the Court concludes that the IRS was properly estopped from attempting to collect taxes and statutory additions for the period up to June 30, 1976.

The decision and order of Judge Ryan are affirmed.

SO ORDERED.