**In re Silas V. DARDEN &
Shirley H. Darden.**

**Bankruptcy No. 95–25153.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Aug. 15, 1996.

Robert V. Roussos, Roussos and Langhorne, P.L.C., Norfolk, VA, for debtors.

Greg D. Stefan, Assistant United States Attorney, Norfolk, VA, for I.R.S.

David R. Levin, Portsmouth, VA, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter is before the Court on the Internal Revenue Service's Objection to Confirmation of the debtors' Chapter 13 plan. Also before the Court is the debtors' Objection to Claim filed by Internal Revenue Service. Both parties have submitted briefs and presented oral argument.

### FACTUAL BACKGROUND

Silas and Shirley Darden ("debtors") previously filed a Chapter 13 petition on September 20, 1991 (the "prior case"). The debtors had failed to file their federal income tax returns for the years of 1985 through 1990. In that case, the Internal Revenue Service ("IRS") objected to the debtors' original plan on the grounds that until the returns were filed, the IRS could not judge the feasibility of the plan under section 1325(a)(6) or determine if it complied with section 1322(a)(2). On December 23, 1991, the Court entered a Consent Order requiring that the delinquent returns be filed within 30 days and granting the IRS leave to file an amended proof of claim.

In February of 1992, the IRS filed an Objection to Confirmation of the debtors' modified plan. The debtors' apparently had still not filed income tax returns for 1985, 1986, and 1988. The parties again reached an agreement that was embodied in a Consent Order entered by the Court on April 10, 1992. This Order recited that the returns had been filed and that the IRS Objection to Confirmation was therefore withdrawn. The terms of the Order also provided that the IRS "shall file an amended proof of claim as necessary" and the debtors would file an amended plan to pay priority claims in full if that proved to be necessary.

The IRS filed a second amended proof of claim in the amount of $5,952.13. This proof of claim listed the 1985 through 1987 tax claims as general unsecured claims because the underlying tax liabilities were assessable, but not yet assessed. The Automatic Stay prevented the IRS from making any assessment against the debtors in respect to taxes for the 1985 through 1988 tax years.

No amended proof of claim was ever filed by the IRS after the second Consent Order was entered. On November 23, 1994, the prior case was converted to one under Chapter 7 and a report of no distribution was filed by the Chapter 7 Trustee. The debtors received their Chapter 7 discharge on March 15, 1995. After the discharge was granted, the IRS proceeded to make assessments with respect to the debtors' federal income tax liabilities for 1985, 1986, 1987, and 1988.

The present Chapter 13 case was filed by the debtors on October 6, 1995. A Chapter 13 plan was filed at the same time as the petition. On November 2, 1995, the IRS filed a proof of claim in the amount of $24,-633.61. This claim listed the debtors' tax liabilities for 1985 through 1988 and 1992 through 1994 as being priority claims.[1] The 1985 through 1988 tax claims were classified as priority claims by the IRS because they were assessed within 240 days of the date of the filing of the present petition. See 11 U.S.C. § 507(a)(8)(A)(ii).

### CONCLUSIONS OF LAW

Three primary issues are presented in this case. First of all, are the taxes in question entitled to priority status? Secondly, were the tax liabilities discharged when the debtors received their Chapter 7 discharge? Finally, assuming the IRS is otherwise entitled to make claims for these taxes, is the IRS nonetheless estopped from doing so based on the facts of this case?

### I.

█ The initial question that must be addressed is whether or not the taxes for 1985, 1986, 1987 and 1988 are entitled to priority claim status. The Internal Revenue Code requires that assessments be made within three years after the return is filed. See 26

---

**1.** The taxes for 1992, 1993, and 1994 are clearly entitled to priority status.

U.S.C. § 6501(a). The IRS argument is that the 1985, 1986, 1987, and 1988 taxes were filed after the first case was filed and the automatic stay consequently prevented the assessment of those tax liabilities. See 26 U.S.C. § 6503(h)(1). A case from this District and the majority of case law elsewhere have held that the filing of a bankruptcy suspends the three year limitations period found in Section 507(a)(8)(A)(I) and therefore tax claims timely filed after the suspension would be entitled to priority status. *In re Bowling,* 147 B.R. 383 (Bankr.E.D.Va.1992); *Matter of Stoll,* 132 B.R. 782 (Bankr.N.D.Ga. 1990); *In re Molina,* 99 B.R. 792, 795 (S.D.Ohio 1988); *In re Ross,* 130 B.R. 312, 313 (Bankr.D.Neb.1991); *In re Solito,* 172 B.R. 837, 840 (W.D.La.1994); *contra In re Gore,* 182 B.R. 293 (Bankr.N.D.Ala.1995). It has also been found that the 240 day period under § 507(a)(8)(ii) is suspended by the pendency of a bankruptcy case. See *In re Richards,* 994 F.2d 763, 766 (10th Cir.1993); *In re DiCamillo,* 186 B.R. 59, 61 (Bankr.E.D.Pa. 1995).

Because the three year period under § 507(A)(8)(I) was suspended by the prior bankruptcy filing, the tax claims in this case retain priority status. Furthermore, the assessments of the taxes were made within the 240 day period prior to the filing of the current petition, which is required for priority status under § 507(A)(8)(ii). The 1985 and 1986 assessments were made on June 19, 1995 while the 1987 and 1988 assessments occurred on September 4, 1995, which means that the taxes were assessed within 240 days of the filing of the present case.

■ A closely related issue is whether or not the Chapter 7 discharge resulted in the discharge of these particular tax claims. Tax claims entitled to priority status are nondischargeable pursuant to § 523(a)(1)(A) which makes clear that the 1988 taxes were not discharged, because they were entitled to priority status in the initial bankruptcy. Section 523(a)(1)(B)(ii) provides that taxes are nondischargeable if a return is not filed after two years prior to the date of the petition. The 1985, 1986, 1987, and 1988 tax returns were not filed after two years prior to the commencement of the prior bankrupt-

cy; they were not in fact filed until after the prior Chapter 13 was commenced. The fact that a bankruptcy case was converted to Chapter 7 in no way affects that result, because 11 U.S.C. § 348(a) provides that conversion of a case does not affect a change in the date of the filing of the petition. Therefore, the taxes for those four years were not discharged by the Chapter 7 case.

■ The debtors in this case never completed the plan payments in the Chapter 13 proceeding and therefore did not receive a discharge under § 1328(a). Because the debtors obtained a Chapter 7 discharge, the discharge provisions of § 523 apply. The bankruptcy court in *In re Quick,* 152 B.R. 902, 908 (Bankr.W.D.Va.1992) disagreed with the debtor's argument that the because the penalty portion of an IRS pre-petition claim had been classified by the trustee as dischargeable, it remained so upon conversion of the case to one under Chapter 7. The court found that because no Chapter 13 discharge had been obtained, the discharge provisions applying to Chapter 7 proceedings applied to the tax penalty and served to make it nondischargeable. *Id.* at 909. We think the same reasoning is applicable here and under the Chapter 7 discharge provisions, these taxes were not discharged.

## II.

■ The debtor relies primarily on the argument that the government is estopped from asserting a priority claim for these taxes. As an initial matter, the IRS asserts that equitable estoppel may not be applied against it. We disagree. There is language in *Miller v. United States,* 949 F.2d 708, 712 (4th Cir.1991) that would at first reading suggest this result. However, we read *Miller* narrowly to mean that equitable estoppel will not lie against the government due to the unauthorized acts of its agent. *Id.* at 712. In an unpublished Fourth Circuit opinion from that same year, it was stated that "the doctrine of equitable estoppel is applicable against the Commissioner of the Internal Revenue". *Estate of Bennett v. Commissioner of Internal Revenue,* 1991 WL 107735 (4th Cir.1991). Two District Court decisions in the Fourth Circuit subsequent to *Miller*

have found equitable estoppel to be applicable to the government, including the IRS. We therefore find that there is no blanket bar against equitable estoppel being asserted against the government. *United States v. Lancaster,* 898 F.Supp. 320, 322 (E.D.N.C. 1995); see also *Smith S, Inc. v. Commissioner of Internal Revenue,* 837 F.Supp. 130 (E.D.N.C.1993) (court analyzed elements of equitable estoppel as applied to conduct of the IRS). However, a party seeking to assert the doctrine of equitable estoppel against the government bears a heavy burden and it is seldom a valid defense, absent affirmative conduct by a government agent. *Lancaster,* 898 F.Supp. at 322–323.

The debtor relies heavily upon *Matter of La Difference Restaurant, Inc.,* 63 B.R. 819 (S.D.N.Y.1986). That case was brought under Chapter XI of the Bankruptcy Act. The facts in the case, briefly stated, were that the debtor and the IRS entered into a stipulation fixing the debtor's tax liability at a certain amount, although the stipulation contained a clause that allowed the IRS to assert additional claims at the time the debtor's plan was confirmed. *Id.* at 821. In 1982, two and a half years after the plan was confirmed, the IRS notified the debtor that an additional $21,553.24 was owed for 1976 taxes. *Id.* at 821–822. The District Court found that the doctrine of equitable estoppel may in certain circumstances be applied against the government or IRS. *Id.* at 826. At the outset, we point out that this case was a plan confirmation case, not a multiple filing case where the relative positions of the debtors and creditors were different due to the subsequent bankruptcy filing.

Although the elements of equitable estoppel seem to be stated slightly differently by various courts, the elements nonetheless appear to be essentially the same. Given the debtors' reliance on *La Difference Restaurant,* we analyze this case under the five factors set forth by the court in that case. See *In re Kreidle,* 146 B.R. 464, 473 (Bankr. D.Colo.1991) ("Although most courts' list of factors are similar, the most closely applicable ones to be used by the Court should be those used by other courts in determining bankruptcy tax proceedings") *aff'd* 143 B.R.

941 (D.Colo.1992). The five factors set forth in *La Difference Restaurant* are 1) a misrepresentation by an agent of the United States acting within the apparent scope of his duties; 2) absence of contrary knowledge by the taxpayer in circumstances where he may reasonably act in reliance; 3) actual reliance; 4) detriment; and 5) a factual context in which the absence of equitable relief would be unconscionable. We do not conclude that the IRS seriously disputes that the third and fourth factors are present here. We therefore address the remaining three factors.

First of all, was there a misrepresentation made by an agent of the United States acting within the scope of his duties? The IRS admits that the United States Attorney working on the case was acting within the scope of his duties. However, the IRS disputes that any misrepresentation was made. The gravamen of the IRS argument is that it was following the statutory requirements of the Internal Revenue and the Bankruptcy Codes and therefore, there was no misrepresentation because the claims for the 1985, 1986, and 1987 taxes were properly classified as unsecured, general claims at that time. The debtor, meanwhile, focuses on the language of the Consent Order which stated that the missing returns had been filed and that the IRS would file an amended proof of claim as necessary, and the debtors would amend their plan to pay any priority claims asserted by the IRS. IRS Exh. 111.

The fact remains that because there was no assessment, there was no priority claim for the 1985, 1986, and 1987 taxes and therefore the language of the Consent Order does not even apply to those claims. However, even if the language of the Consent Order is read to apply to those claims, the conversion of the case to one under Chapter 7 changed the circumstances surrounding the entry of the Consent Order and it does not appear that the IRS ever represented to the debtor that it would forego collection of the taxes should the Chapter 13 case be dismissed or converted. See *In re Grynberg,* 142 B.R. 415, 420 (D.Colo.1991) (no representation that IRS would not pursue claims in post-bankruptcy proceedings). Certainly, the completion of the Chapter 13 plan would

have had an effect on the ability of the IRS to assert additional claims, but the consummation of the plan did not happen in this case. We therefore find that there was no misrepresentation by an agent of the United States.

The second element is the absence of contrary knowledge by the debtor where he may reasonably act in reliance. The IRS argues that because the language in the Consent Order was only a representation of law, there can be no reasonable reliance. This is a valid point under the law; the conversion to Chapter 7 changed the nature of the dischargeability of the taxes. Furthermore, the present case is far different than *La Difference Restaurant* where new owners purchased control of the company one day before the filing of the petition and proceeded upon the presumption that the written stipulation was a full statement of the past liability. *La Difference Restaurant*, 63 B.R. at 829. In this case, we do not read the language of the 1992 Consent Order, stating that an additional proof of claim would be filed as necessary, as being a definite statement as to the tax liability should the circumstances change and therefore do not find reasonable reliance by the debtors.

The final factor in *La Difference Restaurant* was the existence of a factual context where the absence of equitable relief would be unconscionable. This is where the debtors primarily focus their argument. The debtors paid more than enough money into their Chapter 13 plan prior to conversion to pay off the taxes owed and therefore could have paid the taxes at that time had they known the true amount of those taxes entitled to priority status. However, the critical fact here is that the debtors are the ones who brought the problems with the IRS upon themselves. It is not just a case of having failed to pay taxes prior to filing of bankruptcy, but rather this is a situation where the debtors had failed to file any returns for several years. Although the result is unfortunate for the debtors, this is not a case where the absence of equitable relief would be unconscionable in light of their role in bringing about the dilemma they now face.

Finally, *La Difference Restaurant* does not specifically address affirmative misconduct on the part of the government as an element of estoppel. However, this Court finds that to clearly be a requirement in order for equitable estoppel to be applicable against the government. See *United States v. Vanhorn*, 20 F.3d 104, 112–113 n. 19 (4th Cir.1994); *Lancaster*, 898 F.Supp. at 323; *Smith S., Inc.*, 837 F.Supp. at 133. Affirmative misconduct does not mean mere negligence, delay, or inaction, but rather it is an affirmative act of misrepresentation or the concealment of a material fact. *Depaolo v. United States*, 45 F.3d 373, 377 (10th Cir. 1995). In order to estop the government, an individual's actions must go beyond innocent or negligent misrepresentation. *Lancaster*, 898 F.Supp. at 323. Even assuming that all the other elements of equitable estoppel are present, the requirement of affirmative misconduct is simply not present here. Even if the Court were to accept the debtors' argument that these tax obligations should have been classified as priority claims at the time, the best that could be said for the debtors' position is that the failure of the IRS to file an amended proof of claim was mere negligence. There is absolutely no evidence that the government in any way concealed a material fact or affirmatively assured the debtors that their situation relative to tax liabilities would remain the same should the Chapter 13 become no longer viable.

In *La Difference Restaurant* the court touched upon the issue of affirmative misconduct under the second factor of its test. The district court relied upon the fact that the representation was in writing and that the feasibility of the plan of reorganization was made in reliance upon the written agreement. This case is clearly distinguishable as it is not one where the government is attempting to alter its position in the same case. Rather, the debtors' act of converting their prior case from Chapter 13 to one under Chapter 7 altered the legal context of the entire situation. Now we have an entirely new Chapter 13 proceeding and plan and there is no allegation that the failure to file an amended proof of claim was the undoing of the original Chapter 13 proceeding.

We therefore find that invocation of the doctrine of equitable estoppel is not appropriate in the case *sub judice* under the test set forth in *La Difference Restaurant* and additionally there was no affirmative misconduct that would warrant the use of the doctrine against the government here.

## CONCLUSION

Based upon the foregoing discussion, the debtors' Objection to Claim is hereby **DENIED** and the Objection to Confirmation of the IRS is hereby **SUSTAINED.**