Lillian GOLDBERG, Appellant,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Appellee.

No. 178, Docket 76–6078.

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1976.

Decided Dec. 1, 1976.

---

478

David S. Preminger, New York City, and John C. Gray, Jr., New York City, for appellant.

David C. Trager, U.S. Atty., New York City (Josephine Y. King and Richard P. Caro, Asst. U.S. Attys., Brooklyn, N.Y., of counsel), for appellee.

Before HAYS, ANDERSON and GURFEIN, Circuit Judges.

HAYS, Circuit Judge:

Prior to July, 1972, plaintiff-appellant Lillian Goldberg had been receiving widow's disability benefits pursuant to section 202(e)(1)(B)(ii) of the Social Security Act, 42 U.S.C. § 402(e)(1)(B)(ii) (1970 ed.) ["the Act"].[1] On May 21, 1972, about two months before her sixtieth birthday, plaintiff remarried, thereby disqualifying herself from receiving any more widow's disability insur-

[1] Section 202(e)(1) provides, in pertinent part:
"(e) Widow's insurance benefits.
(1) The widow (as defined in section 416(c) of this title) and every surviving divorced wife (as defined in section 416(d) of this title) of an individual who died a fully insured individual, if such widow or such surviving divorced wife—
(A) is not married, [and]

(B)(i) has attained age 60, or (ii) has attained age 50 but has not attained age 60 and is under a disability (as defined in section 423(d) of this title) which began before the end of the period specified in paragraph (5),

    \*    \*    \*    \*    \*    \*

shall be entitled to a widow's insurance benefit for each month . . ."
42 U.S.C. § 402(e)(1) (1970 ed.).

ance benefits or widow's insurance benefits under the Act.[2] Accordingly, in July of 1972 plaintiff's benefits were terminated by the Social Security Administration, which affirmed its decision in a Reconsideration Determination dated November 7, 1972. This decision was upheld, in turn, by an Administrative Law Judge and the Appeals Council of the Social Security Administration. On review in the United States District Court for the Eastern District of New York, Judge Platt sustained the Secretary's decision, and granted the government's motion for summary judgment.

Plaintiff now appeals to this court, attacking the decision of the district court on two grounds: First, she claims that as a result of information given her by her local Social Security office prior to her remarriage, to the effect that marriage would reduce but not eliminate the benefits, the government is estopped from finding her ineligible for benefits. Second, and in the alternative, she argues that the relevant statutory provisions arbitrarily discriminate on the basis of marital status and age, in violation of the equal protection and due process clauses. Because we find both of these contentions to be without merit, we affirm the district court's decision.

## I.

The Social Security Act, insofar as it is relevant to this controversy, provides as

follows: section 202(e)(1) grants benefits to widows who are (A) unmarried, *and* (B) *either* (i) over the age of 60 *or* (ii) over the age of 50 and disabled. *See* 42 U.S.C. § 402(e)(1) (1970 ed.), note 1, *supra*. Section 202(e)(4) provides that if a widow remarries *after* attaining the age of 60, the marriage will be disregarded, except that her benefits will be reduced. *See* 42 U.S.C. § 402(e)(4) (1970 ed.), note 2, *supra*. A widow who remarries *before* attaining the age of 60, however, is simply no longer "not married" within the meaning of section 202(e)(1)(A). Thus, if a disabled widow remarries before she reaches 60, her benefits are terminated because she does not satisfy the requirements of either 202(e)(1) or 202(e)(4); if the disabled widow waits until after she is 60 to remarry, she continues to receive reduced benefits.

Plaintiff attacks this statutory scheme on the ground that it deprives her of her rights to due process and equal protection of the law by impermissibly discriminating on the basis of marital status and age.[3] We disagree.

The Act admittedly draws a sharp line between widows who remarry before age 60 and those who wait until after their sixtieth birthday to remarry. Nevertheless, we cannot overturn this classification unless we

**2.** Had plaintiff waited until after her sixtieth birthday to remarry, she would have remained eligible to receive continued, albeit reduced, benefits. Thus, section 202(e)(4) of the Act provides:

"If a widow, after attaining the age of 60, marries . . ., such marriage shall, for purposes of paragraph (1) of this subsection, be deemed not to have occurred; except that . . . such widow's insurance benefit for the month in which such marriage occurs and each month thereafter prior to the month in which the husband dies or such marriage is otherwise terminated, shall be equal to one-half of the primary insurance amount of the deceased individual on whose wages and self-employment income such benefit is based."

42 U.S.C. § 402(e)(4) (1970 ed.).

In actual fact, plaintiff's disability benefits were continued for two months, due to a delay in administrative processing. She was allowed to retain the overpayments because she was without fault in their receipt.

**3.** We agree with the district court that plaintiff lacks standing to challenge the statutory scheme insofar as it mandates termination of *disability* benefits upon remarriage by a widow under the age of 60. Since plaintiff's disability benefits continued after her marriage until her sixtieth birthday, *see* note 2 *supra*, she received all such benefits to which she would have been entitled even had she not remarried. *See* Social Security Act § 202(e)(1)(B)(ii), 42 U.S.C. § 402(e)(1)(B)(ii) (1970 ed.). She therefore has not suffered the requisite personal injury to object to the provision for termination of disability benefits upon remarriage. *See generally Evans v. Hills*, 537 F.2d 571 (2d Cir. 1976) (*en banc*).

find that it bears no rational relationship to a valid congressional purpose.[4]

Originally, the Act provided that a widow who remarried was disqualified from receiving any insurance benefits. In 1965 Congress added section 202(e)(4), providing for a reduction rather than a total elimination of benefits to widows remarrying over the age of 60. Act of July 30, 1965, Pub. L. No. 89–97, § 333(a), 79 Stat. 286, 403–04. Congress could have decided to extend reduced benefits to widows who remarry at *any* age, but it chose to draw the line at age 60.

■ As the district court reasoned, Congress may well have concluded that a widow who remarries during her 50's is more likely to marry a man having several years earning capacity than is a widow 60 or older. Alternatively, Congress may have decided that practical considerations of administration require that there be an objective, somewhat arbitrary criterion for determining benefit eligibility. *See, e.g., Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 2764–67, 49 L.Ed.2d 651 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 781–85, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Dandridge v. Williams,* 397 U.S. 471, 485, 90

S.Ct. 1153, 25 L.Ed.2d 491 (1970). In either case, we cannot ˙ say that Congress acted unreasonably in denying benefits to widows who remarry before reaching 60 years of age.

We hold that the Act does not discriminate among benefit claimants on the basis of criteria which bear no rational relationship to a legitimate congressional purpose. It follows that plaintiff's constitutional argument is without merit.

## II.

Plaintiff also argues that the government is estopped from terminating her benefits because of a misrepresentation by a local Social Security office employee, to the effect that remarriage before attaining age 60 would reduce but not. terminate her benefits.

The government does not dispute plaintiff's claim that she received misinformation and relied on it to her detriment. Rather, the government argues that plaintiff may not invoke the doctrine of estoppel in this case.

■ It is well established that "estoppel cannot be set up against the Government on

---

4. We reject appellant's suggestion, based on the Supreme Court's decisions in *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), and *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), that the statute be examined under a standard of strict scrutiny. She argues that the Act infringes on a fundamental right, namely the right to marry, by requiring as a condition to securing benefits that a widow remain unmarried until her sixtieth birthday.

In *Loving v. Virginia, supra,* the Court described the freedom to marry as "one of the vital personal rights essential to the orderly pursuit of happiness by free men." 388 U.S. at 12, 87 S.Ct. at 1824. However, the Virginia statutory scheme there invalidated *prevented* marriages between persons solely on the basis of *race*; neither a total bar to marriage nor an invidious racial classification is involved in this case. Moreover, *Loving* did not hold that the right to marry is "fundamental," as that term is understood in an equal protection context.

*Skinner v. Oklahoma, supra,* is not to the contrary. Despite *dictum* to the effect that

"*[M]arriage and procreation* are fundamental to the very existence and survival of the race," 316 U.S. at 541, 62 S.Ct. at 1113 (emphasis added), *Skinner* held. only that "strict scrutiny of the classification which a State makes in a *sterilization law* is essential . . ." *Id.* (emphasis added). Again the court did not hold that any classification which burdens the right to marry must be examined with strict scrutiny.

Nor does *Griswold v. Connecticut, supra,* support plaintiff's argument. There the Court was concerned with "the notions of privacy surrounding the marriage relationship," 381 U.S. at 486, 85 S.Ct. at 1682, not with the right to marry.

In any event, eligibility for benefits may be dependent upon marital or familial relationships without violating the constitution. *See, e.g., Weinberger v. Salfi,* 422 U.S. 749, 777–85, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Kahn v. Shevin,* 416 U.S. 351, 353–56, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). We therefore agree with appellee that the crux of plaintiff's constitutional objection is that the statute unconstitutionally discriminates on the basis of *age.*

the basis of an unauthorized representation or act of an officer or employee who is without authority in his individual capacity to bind the Government." *Byrne Organization, Inc. v. United States,* 287 F.2d 582, 587, 152 Ct.Cl. 578 (1961). *See also Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Although at least one court has evinced a willingness to depart from this principle in certain circumstances, *see, e.g., United States v. Wharton,* 514 F.2d 406, 412–13 (9th Cir. 1975); *Fox v. Morton,* 505 F.2d 254, 256 (9th Cir. 1974); *United States v. Lazy F C Ranch,* 481 F.2d 985, 988 (9th Cir. 1973); *Brandt v. Hickel,* 427 F.2d 53 (9th Cir. 1970); *Schuster v. C.I.R.,* 312 F.2d 311 (9th Cir. 1962), we decline to do so here.

The government could scarcely function if it were bound by its employees' unauthorized representations. Where a party claims entitlement to benefits under federal statutes and lawfully promulgated regulations, that party must satisfy the requirements imposed by Congress. Even detrimental reliance on misinformation obtained from a seemingly authorized government agent will not excuse a failure to qualify for the benefits under the relevant statutes and regulations.[5]

Thus, since it is clear that the local employee of the Social Security Administration was not authorized to represent to plaintiff that she would continue to receive reduced benefits after her marriage, the government is not estopped from denying her widow's insurance benefits.

Accordingly, the judgment of the district court is affirmed.

---

**5.** Our decision in *Corniel-Rodriguez v. I.N.S.,* 532 F.2d 301 (2d Cir. 1976), is not to the contrary. We held there that estoppel may be invoked against the government where there is "noncompliance with an affirmatively required procedure . . .." 532 F.2d at 306–07. We took pains, however, to limit our decision to the specific facts of that case, particularly the fact that the government employee had failed to provide petitioner with a warning *mandated* by federal regulations. *Id.* and n.18. No such regulation governs Social Security office employees.