## In the Matter of LA DIFFERENCE RESTAURANT, INC., Debtor.

### Bankruptcy No. 76 B 1208.

United States Bankruptcy Court,
S.D. New York.

April 8, 1983.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for I.R.S.; Alan Nisselson, Asst. U.S. Atty., New York City, of counsel.

## DECISION ON CLAIM OF INTERNAL REVENUE SERVICE

EDWARD J. RYAN, Bankruptcy Judge.

Debtor-Plaintiff, La Difference Restaurant, Inc., ("La Difference"), seeks an order declaring that the debtor does not owe the Internal Revenue Service ("IRS") taxes, interest and penalty for withholding and FICA taxes for the period ending June 30, 1976, and enjoining the IRS and its agents from taking any measure to enforce their alleged claim. For the reasons set forth below, the plaintiff's application is granted.

On or about May 19, 1976, the debtor filed a Chapter XI petition with this court. Thereafter, a plan of arrangement was confirmed by order dated December 14, 1979. Pursuant to the provisions of the order and the debtor's Plan, this court has jurisdiction for purposes of determining objections to any and all claims made in the proceedings.

On August 13, 1979, prior to the entry of the order confirming the arrangement, the parties entered into a stipulation (the "stipulation" or "agreement") fixing the debtor's federal tax liability at $42,003.92, and providing for a schedule of payments of said taxes. Pursuant to the stipulation, the debtor paid $15,000 as a cash deposit on confirmation and was to pay the balance over a 24-month period in installments of $1,125.16, with the final installment payment of $1,125.25.

The agreement culminated months of negotiations during which time the IRS submitted four superseding proofs of claim, each one further reducing the debtor's tax liability.[1] The feasibility of the debtor's

Finkel, Goldstein & Berzow, New York City, for debtor.

1. The first of such claims included the withholding and FICA taxes for the period ending June 30, 1976. The IRS, in response to the debtor's objection, amended its claim and did not assert a claim for withholding and FICA taxes for the above period. The debtor's management, who acquired control of the company the day before the Chapter XI petition was filed, was unaware of the extent of liability for payroll taxes due the IRS. However, the management, in an attempt to reconcile and ascertain the various liabilities, arranged for the preparation of various payroll tax returns and, based upon the information available, concluded that the debtor owed between $40,000 and $45,000 in taxes to the IRS. Predicated upon this figure, the debtor agreed with the IRS that its claim (Claim No. 94) should be allowed in the sum of $42,003.93.

Plan was predicated upon the effectiveness of the stipulation with the IRS. In reliance upon the aforesaid agreement, La Difference confirmed a Plan of Arrangement with its creditors.

On May 6, 1982, the IRS notified the debtor by letter that it owed an additional sum of $21,533.24 [2] for the period ending June 30, 1976. The additional tax had been negligently omitted from Claim No. 94, which claim had been the basis for the stipulation.

The stipulation was drawn by the Government and included the following "boiler plate" language in Section 5:

If additional federal taxes and statutory additions which have not been claimed prior to the confirmation of a plan of arrangement are determined to be due from the debtor, they will be paid in full by the debtor immediately after notice. However, the appropriate District Director may permit the additional and statutory additions to be paid in installments.

The debtor argues that the IRS cannot at this time assert its claim since either (i) the claim has been discharged by the provisions of the confirmation order and the provisions of the Bankruptcy Act, or (ii) the IRS is equitably estopped from asserting said claim and is guilty of laches.

■ Plaintiff's contention that the claim has been discharged solely by the confirmation order or by the Bankruptcy Act provision is not tenable. The United States Supreme Court has held that a debtor's personal liability for post-petition interest on unpaid taxes is not discharged by the bankruptcy proceedings. *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). The court relied on Section 17 of the Bankruptcy Act, 11 U.S.C. § 35, which provides in relevant part:

A discharge in bankruptcy shall relieve a bankrupt from all his provable debts, whether allowable in full or part, except such as (1) are due a tax levied by the United States. . . .

*Bruning v. United States, supra,* at 360, 84 S.Ct. at 907. It is settled law that the bankruptcy proceedings will not dispose of interest and penalties on federal tax claims. *In re Jaylaw Drug, Inc.,* 621 F.2d 524 (2d Cir.1980).

■ The question next before this court is whether the Internal Revenue Service may be equitably estopped from asserting a deficiency for the tax period which was included in its original proof of claim, but which was omitted from a superseding claim, and which superseding claim formed the basis of an agreement which the debtor relied upon in confirming a plan of arrangement with creditors.

Although, for various government policy reasons, Congress had determined that certain types of debts should survive bankruptcy and override the policy of granting a debtor a fresh start (*see, Bruning v. United States, supra,* at 361, 84 S.Ct. at 908), the instant proceeding proves an exception to that rule.

While the IRS claim is not dischargeable based solely on the bankruptcy proceeding itself, the added factor, that of a binding agreement between the parties, when coupled with an estoppel claim, leaves this court of equity to conclude that the claim for taxes has already been satisfied.

■ In the instant case, there was a binding contract between the debtor and the IRS which contract attempted to settle and dispose of the latter's claim. The stipulation was drafted by the IRS. Fundamental contract principles provide for a rule of construction against the drafter of an agreement, especially where the drafting party has a stronger bargaining position. *Semmes Motors, Inc. v. Ford Motor Company,* 429 F.2d 1197, 1207 (2d Cir.1970).

■ In addition, if the language of the agreement is susceptible to more than one meaning, the one interpretation that oper-

---

**2.** The additional sum claimed by the IRS includes: (a) withholding and FICA taxes for the period ending June 30, 1976, in the sum of $12,479.98; (b) accumulated penalty of $2,927.92; and, (c) accumulated interest of $6,125.34, aggregating a total of $21,533.24.

ates against the party who prepared such form must be adopted. *Rubinger v. I.T. & T.,* 193 F.Supp. 711, 722 (S.D.N.Y.1961). This is an appropriate case for the application of those rules, and thus, the language must be interpreted most strongly against the IRS.

The debtor, in the present case, is cognizant of Section 5 of the stipulation, but argues that such language was never intended to operate in this factual framework. The debtor asserts that since the IRS was aware of the claim for the taxes in question and since it included the tax period in its first proof of claim, it is not "a claim which was not claimed prior to the confirmation", but an effort to revive a withdrawn claim. Under the present factual circumstances, this court agrees with that line of reasoning.

It would be inequitable to allow the Government to recover in this situation, and such a decision does not run counter to any present congressional policy.

The IRS cites *In re Jaylaw Drug, Inc.* ("*Jaylaw*") as a case similar on its facts which stands for the proposition that the Government is properly allowed to collect interest and penalties from a rehabilitated debtor. Although, in that case, the Government filed a proof of claim for withholding and FICA taxes, which claim was amended several times and was later paid in full as a priority claim, no contractual stipulation supplemented the filed proof of claim.

In *Jaylaw,* the court relied on the congressional judgment that tax collection policies override bankruptcy policies. However, congressional determination will not be undermined here where, in addition to the bankruptcy proceedings, we have a Government action that leads to its equitable estoppel. In *Schuster v. Commissioner of Internal Revenue,* 312 F.2d 311, 317 (9th

Cir.1962), the court recognized that, "the policy in favor of efficient collection of public revenues outweighs the policy of estoppel in its usual and customary content." But as long as the concept of estoppel retains any validity "[i]t is conceivable that a person might sustain such a profound and unconscionable injury in reliance on the Commission's action as to require, in accordance with any sense of justice and fairplay, that the Commissioner not be allowed to inflict the injury." The court, in *Jaylaw,* also stated that there was no need to inquire in that case whether elements essential to estoppel were present or whether estoppel would lie against the Government if they were. *In re Jaylaw Drug, Inc., supra,* at 529.

This court is aware of the oft-stated principle that estoppel generally may not be invoked to bind the United States, *New York Athletic Supply Company, Inc. v. United States,* 450 F.Supp. 469, 471 (S.D.N.Y.1978). Also we are cognizant of the Government's argument that, although there has been some slight erosion in recent years of the formerly iron-clad rule concerning estoppel,[3] this erosion is a trend in the Court of Appeals of the Ninth Circuit which has not been followed in the Second Circuit. *New York Athletic Supply Company, Inc. v. United States, supra,* at 471; *Goldberg v. Weinberger,* 546 F.2d 477 (2d Cir.1976). However, the District Court in the Second Circuit in *New York Athletic Supply Co.,* although relying on the application of an unambiguous statute providing for the making of an assessment at any time when no return has been filed, gave recognition to the estoppel requirements against the IRS set forth in *Tonkonogy v. United States.*[4] The court, in *New York Athletic Supply Co.,* at 471 of the opinion, stated, "Under those criteria accepted here-

---

**3.** *Schuster v. Commissioner of Internal Revenue, supra; United States v. Lazy FC Ranch,* 481 F.2d 985 (9th Cir.1973).

**4.** The New York requirements to invoke estoppel against the Government were stated in *Tonkonogy v. United States,* 417 F.Supp. 78, 79 (S.D.N.Y.1976), to be: (1) a misrepresentation by an agent of the United States acting within the apparent scope of his duties; (2) the absence of contrary knowledge by the taxpayer in circumstances where he may reasonably act in reliance; (3) actual reliance; (4) detriment; (5) a factual context in which the absence of equitable relief would be unconscionable.

in there can be no estoppel against the Government in this case," because there was no reasonable reliance on IRS statements in the given situation.

The court, in *Goldberg,* held that estoppel could not be used against the Government on the basis of unauthorized representations by an employee who was without authority in his individual capacity to bind the Government. 546 F.2d at 480, 481. [Where a party claims entitlement to benefits under Federal statutes and lawfully promulgated regulations, the party must satisfy the requirements imposed by congress.]

However, in light of the recent United States Supreme Court case, *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), reh. den. 451 U.S. 1032, 101 S.Ct. 3023, 69 L.Ed.2d 401 (1981), we readopt the New York rule on estoppel as stated in *Tonkonogy.*[5] The trigger for the use of the estoppel doctrine is conduct by one person inconsistent with the position later adopted by him which is prejudicial to the rights of another who relied on such prior conduct to his detriment. *Rosenthal v. Reliance Ins. Co.,* 25 A.D.2d 860, 269 N.Y.S.2d 778 (2d Dept.1966), *aff'd* 19 N.Y.2d 712, 279 N.Y.S.2d 173, 225 N.E.2d 880 (1967).

In *Schweiker,* a Social Security field representative's erroneous statement and neglect of the claims manual did not estop the Secretary of Health & Human Services from denying retroactive benefits to respondent for the period in which she was eligible for benefits but for which she had not filed a written application. Although the field representative failed to follow the claims manual, the manual had no legal force and did not bind the Social Security Administration ("SSA"). The court was not authorized to overlook the valid regulation requiring written application.

The court in *Schweiker,* implicitly recognized the applicability of an estoppel theory to the Government in some circumstances. Yet, rather than address the issue in a comprehensive fashion, the court simply concluded that *Schweiker* was not a case warranting estoppel. 450 U.S. at 792, 101 S.Ct. at 1472 (dissent). The court stated that it had never decided what conduct by a Government employee would estop the Government from insisting upon compliance with valid regulations governing distribution of welfare benefits. 450 U.S. at 788, 101 S.Ct. at 1471. The court declined to decide whether even affirmative misconduct would estop the Government. *Id.*

Estoppel against the Government is an extremely unsettled and volatile area of law. The question of whether the Government may be estopped has received inconsistent treatment from appellate courts and has been the subject of considerable ferment. *Id.* at 791, 101 S.Ct. at 1472.

It is clear, though, that the issue of estoppel against the sovereign can not be decided without a thorough examination of the factual framework of each particular case.

In the present case, there are several distinctions from *Schweiker* which make this case appropriate for the application of estoppel. First, in *Schweiker,* the agent failed to follow the claims manual which in itself had no legal force and could not bind the SSA. The court was also influenced by such policy considerations as whether the Government ought be put at risk for every alleged failure by an agent to follow instructions to the last detail in one of a thousand cases. The court weighed the agent's minor breach of a manual against the administrative benefits of the SSA of receiving written applications for welfare benefits. *Id.* at 789, 790, 101 S.Ct. at 1471, 1472. However, in the case at bar, the agreement entered into voluntarily between the IRS and La Difference does have legal effect and is binding on the IRS.

Second, the erroneous replies in *Schweiker* were oral, while in La Difference the agreement is in writing, which fact provides a stronger base for recognizing estoppel. In *Walsonavich v. United States,* 335 F.2d 96, 101 (3d Cir.1964), the court stated that "[w]hile it is true estoppel is to be rarely

5. *See* fn. 4, *supra.*

invoked against the United States, there are circumstances where the Government should be required by our law to stand behind the written agreement of a higher public official like the Commissioner . . . in order to prevent manifest injustice."

Third, the debtor herein relied and took action upon the written representation of the IRS and could not now rectify the harm that would be caused by the Government's reinstatement of its claim. Conversely, in *Schweiker,* the court stated that the agent's conduct did not cause respondent to take action or fail to take action that respondent could not correct at any time. 450 U.S. at 785, 101 S.Ct. at 1469.

The present case is also distinguishable from the two earlier Second Circuit cases which held estoppel not to apply. Unlike *Goldberg,* where the representations were unauthorized and estoppel, therefore, did not apply, in our case there is no claim by the IRS that the representation made (the stipulation) was unauthorized. The acts or omissions of the officers of the Government, if they be authorized to bind the United States in a particular transaction, will work an estoppel against the Government if the officers acted in the scope of their authority. *Walsonavich v. United States, supra* at 101. Also, distinct from *New York Athletic Supply Company,* where reliance was held to be unreasonable, it can be found that La Difference acted reasonably in its reliance on a written stipulation signed by both parties.

Some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision-making process that the Government may be estopped from disavowing the misstatement. *Brandt v. Hickel,* 427 F.2d 53 at 56, 57 (9th Cir.1970).

Under the circumstances and in light of the development of estoppel, this case must be looked at under the requirements of *Tonkonogy* to determine whether to invoke estoppel against the Government.

Under those criteria, accepted herein, estoppel will lie against the Government. In this case, the taxpayer reasonably assumed, upon execution of the stipulation, that he could arrange a plan with his creditors for the settlement of his debts. Thus, instead of arranging to make payment predicated upon tax claims, including the $12,479.98 charge, it predicated its arrangement upon a lesser stipulated figure. Had the debtor been aware of the additional tax owing, it would have presented an entirely different plan to the creditors. The misrepresentation was made by an assistant district counsel acting within the scope of his authority. The stipulation culminated months of negotiation.

■ The debtor's new management had no contrary knowledge upon which to base a belief that the stipulated amount was not final, or to indicate that it could not act with reliance upon the agreed upon sum. The feasibility of the debtor's plan with creditors was made in reliance upon the agreement. If the Government is allowed to invalidate such reliance, the creditors' and the debtor's rights will be unjustly impaired. As stated in *Schuster, supra* at 317, the debtor's equitable interest is so compelling and the loss which it would sustain so unwarranted that estoppel is justified against the IRS with respect to its $21,533.24 claim.

It must be concluded that by any standard of equity and fairness, the Government is estopped in this case from claiming that the debtor-taxpayer owes this additional tax and from taking any measure to enforce said claim.

It is so ordered.