18-3391-cv
*Schwebel v. Crandall, et al*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2019

(Argued: December 9, 2019    Decided: July 22, 2020)

Docket No. 18-3391-cv

RONNIT SCHWEBEL,

*Plaintiff-Appellee*,

*v.*

KRISTINE R. CRANDALL, Acting Director, Nebraska Service Center, United States Citizenship and Immigration Services, CHAD F. WOLF, Acting Secretary, United States Department of Homeland Security,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:    SACK, CHIN, AND BIANCO, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the

Southern District of New York (McMahon, *C.J.*), concluding that defendants-

appellants' denial of plaintiff-appellee's application pursuant to the Child Status

Protection Act, 8 U.S.C. § 1153(h), for adjustment of status to lawful permanent resident was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* The district court set aside defendants-appellants' October 17, 2017 decision denying plaintiff-appellee's adjustment of status application and directed defendants-appellants to reopen and readjudicate the application.

AFFIRMED.

---

JEFFREY A. FEINBLOOM, Feinbloom Bertisch LLP, Rye, New York, *for Plaintiff-Appellee.*

BRANDON M. WATERMAN, Assistant United States Attorney (Christopher Connolly, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, New York, *for Defendants-Appellants.*

---

CHIN, *Circuit Judge*:

In 2007, when she was seventeen years old, plaintiff-appellee Ronnit Schwebel applied for adjustment of her immigration status to lawful permanent resident under the Child Status Protection Act (the "CSPA"), 8 U.S.C. § 1153(h), as a "derivative beneficiary" of her mother. On June 12, 2007, the U.S. Department of State announced that employment visas were available and that

2

applications could be submitted from July 1, 2007 to August 17, 2007. The Schwebel family's immigration attorney recommended that Schwebel file her application immediately. She agreed, and her lawyer submitted her application a few days before the application period opened to account for processing delays. The United States Citizenship and Immigration Services ("USCIS") received the application four days early, but, in violation of its internal procedures, it failed to advise Schwebel of any issue with or defect in her application. Instead, despite inquiries from Schwebel's lawyer, USCIS did not respond for several years, at which point it advised Schwebel that she was required to submit a new application. By then, circumstances had changed such that Schwebel was no longer statutorily eligible to adjust status under the CSPA and USCIS denied her application.

On November 3, 2017, Schwebel commenced this action pursuant to the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701 *et seq.*, against defendants-appellants Kristine R. Crandall, Acting Director, Nebraska Service Center, USCIS, and Chad F. Wolf, Acting Secretary, United States Department of Homeland Security (together, the "government"), alleging that she qualified as a "child" under the CSPA, 8 U.S.C. § 1153(h), and that the decision to deny her

3

application for adjustment of status to lawful permanent resident was arbitrary, capricious, or otherwise contrary to law. The parties cross-moved for summary judgment.

On September 7, 2018, the district court issued a Decision and Order granting Schwebel's motion for summary judgment and denying the government's cross-motion, concluding that Schwebel was a "child" within the meaning of the CSPA. For the reasons set forth below, we affirm, although we do so on the grounds of equitable estoppel. Because we affirm on this alternative basis, we decline to address the statutory question and we express no view on the district court's interpretation of 8 U.S.C. § 1153(h). We hold that the government is equitably estopped from initiating rescission proceedings to reopen Schwebel's adjustment of status application or placing her in removal proceedings. Accordingly, the district court's judgment in favor of Schwebel is AFFIRMED.

4

## BACKGROUND

**A.** *The Statutory Scheme*

The Immigration and Nationality Act allows for immigrants to receive permanent residency through employer sponsorship. For an employer-sponsored immigrant who is already in the United States, there is a three-part process for obtaining permanent residency. *See generally Mantena v. Johnson*, 809 F.3d 721, 724 (2d Cir. 2015). First, the Department of Labor must issue an alien labor certification to the immigrant's employer. *See* 8 U.S.C. § 1182(a)(5)(A)(i). Second, USCIS must approve the employer's immigrant visa Form I-140 petition. *See* 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(a). Third, when a visa is available, the alien applies to USCIS for lawful permanent resident status with a Form I-485 application, and the alien's status is adjusted upon approval. *See* 8 U.S.C. § 1255(a); 8 C.F.R. §§ 204.5(n)(1), 245.2(a)(2), (5).[1]

---

[1] The U.S. Department of State publishes a monthly Visa Bulletin that lists "current" priority dates based on category and country of origin. A visa is immediately available to a non-citizen if her priority date is on or before the corresponding date in the bulletin. *See* 8 C.F.R. §§ 245.1(g)(1), 1245.1(g)(1). "Because there are limits on the number of such [employment-based] visas in each category and from each country, immigrants must often wait many years for a permanent residency visa." *Mantena*, 809 F.3d at 725.

5

The alien's child may also apply for adjustment of status as a "derivative beneficiary." 8 U.S.C. § 1154(a)(1)(D)(ii). A "child" is "an unmarried person under twenty-one years of age," who meets certain other requirements as well. 8 U.S.C § 1101(b)(1). Whether a person qualifies as a "child" is determined according to the CSPA, rather than solely by biological age. *See* 8 U.S.C. § 1153(d), (h)(1); 8 U.S.C. § 1101(b)(1). The CSPA provides a method for calculating a person's age to see if she qualifies as a "child" for immigration purposes. *See* 8 U.S.C. § 1153(h)(1). "The principal purpose of the CSPA was to provide relief to children of United States citizens who were seeking adjustment of their resident status or were seeking to obtain visas, but were denied relief because administrative delays in processing their applications caused them to 'age out' (reach the age of twenty-one), before action was taken on their applications." *Henriquez v. Ashcroft*, No. 02-civ-7355 (BSJ), 2004 WL 3030116, at *5 (S.D.N.Y. Nov. 23, 2004), *report and recommendation adopted*, No. 02-civ-7355, Dkt. No. 8 (S.D.N.Y. Dec. 27, 2004); *see Padash v. INS*, 358 F.3d 1161, 1172 (9th Cir. 2004) ("The legislative objective reflects Congress's intent that the [CSPA] be construed so as to provide expansive relief to children of United States citizens and permanent residents."); *see also* 148 Cong. Rec. H4989 (daily ed. July 22, 2002)

6

(statement of Rep. Sensenbrenner), 2002 WL 1610632, at *H4991 (noting that the CSPA is a "family-friendly legislation" that "facilitates and hastens the reuniting of legal immigrants' families," as consistent with "a prime goal of our immigration system" of "[b]ringing families together").

**B.** *The Administrative Process*

**1.** *The 2007 Application*

Schwebel, a German citizen, was born on April 26, 1990 and has resided in the United States since she was eight years old.[2] On January 12, 2007, Schwebel's mother's employer filed a visa petition (Form I-140) with USCIS. Schwebel was sixteen years old at the time. While the petition was pending, the U.S. Department of State released Visa Bulletin No. 107 on June 12, 2007, announcing that applications for employment visas -- including Schwebel's mother's visa category -- would be available from July 1, 2007 to August 17, 2007. Because Schwebel was under twenty-one years of age at the time, she was eligible to file an application for adjustment of status to lawful permanent resident as a dependent of her mother.

---

[2] The factual background presented here is derived from undisputed facts in the record unless otherwise noted.

The Schwebel family's attorney advised Schwebel to file such an application. The attorney recommended submitting the application before July 1, 2007 to account for potential processing delays by USCIS. The attorney mailed USCIS a completed Form I-485 application on behalf of Schwebel (the "2007 application") on June 25, 2007. USCIS received the 2007 application on June 27, 2007, as noted by a delivery confirmation.

According to the government, in 2007, USCIS "should have 'manually' rejected all improperly submitted employment-based adjustment of status applications," which would have included Schwebel's 2007 application because it was submitted prematurely. J. App'x at 370. The government represents that a manual rejection would have resulted in the return of the completed application to the applicant with a cover letter explaining the reasons for rejection, but that no electronic records would have been generated due to agency procedure at the time. Any manual rejections would have been recorded in a "handwritten, temporary log of cases," which was "destroyed after approximately 4 months." J. App'x at 371. Because she did not receive a receipt or a rejection notice, Schwebel was unaware of any processing issues with the 2007 application.

On August 9, 2007, Schwebel's attorney supplemented the 2007 application with a medical report, which was received by USCIS on August 13, 2007. USCIS generated an "[i]nterfiling" memo in connection with the medical report, but did not notify Schwebel (or her attorney) of any defect with the 2007 application. J. App'x at 378. Consequently, Schwebel's attorney did not alert the family to any irregularities in the process or any issues with respect to the 2007 application.

On August 17, 2007, the filing deadline closed for employment visa applications under Visa Bulletin No. 107. Following this deadline, an immigrant visa did not become available again until after Schwebel turned twenty-one years old. Schwebel alleges that USCIS lost or misplaced the 2007 application, which the government denies.

Over the next three years, Schwebel's attorney submitted multiple status inquiries to USCIS in connection with the 2007 application. *See* J. App'x at 125 (status inquiry submitted January 29, 2008); 126 (May 5, 2008); 127 (January 28, 2010); 129 (February 24, 2010); 130 (March 1, 2010); 132 (March 16, 2010). The government concedes that USCIS did not respond to Schwebel's inquiries until February 2010, at which time it admitted that it had no record of the 2007

9

application.  On March 8, 2010, USCIS suggested Schwebel file a new Form I-485 application with the appropriate fees.  Following the 2007 deadline, no visas were available to Schwebel until September 2012, at which point, Schwebel had already turned twenty-one years old.

**2.**     *The 2015 Application*

In 2010, Schwebel's mother's employer went out of business.  On March 1, 2012, Schwebel's mother became the beneficiary of a visa petition filed by her new employer.  Pursuant to 8 C.F.R. § 204.5(e)(1), Schwebel's mother was able to transfer the 2007 petition's priority date to the new petition, enabling her to adjust her status without further delay in September 2012 when immigration visas were again available.  Schwebel's mother and father adjusted to lawful permanent resident status in January 2013.

After securing lawful permanent resident status for her parents, Schwebel's attorney initiated a congressional inquiry with USCIS on Schwebel's behalf.  On April 2013, USCIS responded to the congressional inquiry, reiterating that it had no record of the 2007 application and that "[w]ithout definitive evidence of the filing of [Schwebel and her family's] I-485 applications . . . [it] would have no means to consider [Schwebel] under the [CSPA]," because "she

10

had already turned 21 and no longer qualified as a derivative child under the CSPA." J. App'x at 135.

Schwebel subsequently consulted with three more attorneys. In July 2015, an attorney advised her that she could seek to adjust her status under the CSPA based on her 2007 application and the extraordinary circumstances of her case. On September 22, 2015, Schwebel filed a new adjustment of status application (the "2015 application"). She attached with her submission a memorandum of law contending that she was eligible due to her affirmative steps in filing the 2007 application and the extraordinary circumstances of the case. On October 17, 2017, USCIS characterized her situation as "unfortunate," but denied her application on the basis that she was statutorily ineligible to adjust status pursuant to the CSPA's definition of "child," and that 8 U.S.C. § 1153(h) is limited to the petition that is the basis for the parent's adjustment. J. App'x at 67-69. USCIS did not otherwise address the circumstances that surrounded the 2007 application because it "did not find the evidence relating to the 2007 petition relevant under CSPA because [Schwebel's] mother did not adjust status through this offer of employment." J. App'x at 384.

**C.** *Proceedings Below*

Schwebel filed her complaint with the district court on November 3, 2017, seeking review of USCIS's denial of the 2015 application for adjustment of status as arbitrary, capricious, or otherwise contrary to law, for that denial to be set aside, and to be considered a "child" under a new determination for her adjustment of status. Both parties moved for summary judgment, and, on September 7, 2018, the district court granted Schwebel's motion and denied the government's cross-motion.

The district court ruled that Schwebel was entitled to summary judgment on two grounds. First, the district court interpreted the plain language of the CSPA and concluded that Schwebel qualified as a child in light of the government's own prior interpretations of the statute and the purpose of the statute. In reaching this conclusion, the district court determined that the 2007 application date was the relevant "date" when a visa became available under the CSPA and calculated Schwebel's "age" for immigration purposes as "seventeen years, two months, and one day." S. App'x at 13. The district court used Schwebel's age on July 1, 2007, the day a visa was available (seventeen years, two months, and five days), and reduced it by the number of days the 2015

12

application was pending (four days).  As a result, the district court concluded that Schwebel was a "child" for immigration status purposes under the CSPA.  S. App'x at 15.

Second, the district court concluded that USCIS's decision to reject Schwebel's 2015 application was arbitrary and capricious because it misinterpreted the law and failed to consider the relevant circumstances of the 2007 application in its decision.  Pursuant to 5 U.S.C. § 706(2)(A), the district court set aside USCIS's October 17, 2017 decision denying Schwebel's 2015 application, and directed USCIS to reopen and readjudicate it.[3]  The district court did not address Schwebel's argument for equitable relief under the equitable estoppel doctrine.  Judgment entered September 10, 2018.  This appeal followed.

---

[3]     Consistent with the district court's order, on October 25, 2018, USCIS readjudicated the 2015 application and granted Schwebel lawful permanent resident status.  At oral argument, the government represented that, should this Court reverse the district court's judgment, it could initiate rescission proceedings to reopen Schwebel's adjustment of status and potentially begin removal proceedings.  Rescission is "a procedure whereby the Attorney General restores an alien to the status held before adjustment to that of a lawful permanent resident.  Rescission thus falls short of removal, although an alien may become removable as a result of rescission if his restored status does not permit him lawfully to remain in the United States." *Adams v. Holder*, 692 F.3d 91, 96 (2d Cir. 2012).

## *DISCUSSION*

We review the district court's ruling on cross-motions for summary judgment *de novo*, in each case construing the evidence in the light most favorable to the non-moving party. *See Fund for Animals v. Kempthorne*, 538 F.3d 124, 131 (2d Cir. 2008). We may affirm a grant of summary judgment "on any basis [with] sufficient support in the record, including grounds not relied on by the district court." *Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 205 (2d Cir. 2006).

On appeal, the government contends that the district court erred in holding that Schwebel qualified as a "child" pursuant to the CSPA. It principally contends that the district court incorrectly interpreted the statute by treating the 2007 application as the "applicable petition" for purposes of the CSPA age calculation. We do not reach these issues, however, because we affirm on the alternative ground of equitable estoppel.

**1.** *Applicable Law*

The elements of estoppel are a material representation, reasonable

reliance, and provable damages. *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.

1993); *see also Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d

Cir. 2001) ("[E]quitable estoppel is properly invoked where the enforcement of

the rights of one party would work an injustice upon the other party due to the

latter's justifiable reliance upon the former's words or conduct."). Equitable

estoppel is available against the government in "the most serious of

circumstances," and requires "a showing of affirmative misconduct by the

government." *Rojas-Reyes v. INS*, 235 F.3d 115, 126 (2d Cir. 2000) (internal

quotation marks omitted); *see Corniel-Rodriguez v. INS*, 532 F.2d 301, 306-07 (2d

Cir. 1976) (holding that government official's "noncompliance with an

affirmatively required procedure" constituted "severe" misconduct, and

reversing Board of Immigration Appeal's ("BIA") order of deportation without

remanding to agency for fact-finding or further proceedings). The justification

for estoppel need not be proven by documentation, *see Mikinberg v. Baltic S.S. Co.*,

988 F.2d 327, 331 (2d Cir. 1993), but the party asserting applicability of the

doctrine "must do more than show that some metaphysical doubt exists

regarding the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993).

This Court has applied equitable estoppel in the immigration context to remedy "unintentional injustices" imposed "upon the naive albeit honest alien who is understandably unfamiliar with the labyrinthine intricacies of our immigration laws." *See Corniel-Rodriguez*, 532 F.2d at 304; *see also Podea v. Acheson*, 179 F.2d 306, 309 (2d Cir. 1950) (rejecting a "technical" application of the Nationality Act requiring expatriation after finding that plaintiff's actions were induced by "erroneous advice" from the U.S. Department of State).[4]

In *Corniel-Rodriguez*, the petitioner was a Dominican Republic native and an unmarried daughter of a U.S. permanent resident. *See* 532 F.2d at 302. She applied for, and was issued, an immigrant visa as the unmarried minor child of a U.S. special immigrant. *See id.* at 302-03. She was never given warning,

---

[4] Our sister circuits have similarly applied estoppel in the immigration context where the government engaged in affirmative misconduct. *See, e.g., Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1166 (9th Cir. 2005) ("We conclude that the doctrine of equitable estoppel precludes the INS from relying on the consequences of its own alleged affirmative misconduct to insulate that misconduct from review."); *cf. Fano v. O'Neill*, 806 F.2d 1262, 1265-66 (5th Cir. 1987) (holding that petitioner adequately stated a claim against the government for affirmative misconduct where he alleged the INS "willfully, wantonly, recklessly, and negligently delayed in processing his application" (internal quotation marks omitted)).

written or oral, by the consular officer (advice that the consular officer was mandated by regulation to give) that she needed to remain unmarried to satisfy the requirements of her visa. *See id.* at 306-07. Shortly before the petitioner sought to enter the United States, she married. *See id.* at 302.

On appeal from an order of deportation, we held that the consular official's conduct was misleading, prejudicial, and manifestly unjust. *See id.* at 306-07. According to the petitioner, if she had been informed of the effect of the marriage on her admissibility, she would have postponed her wedding for three days and entered the United States in compliance with the terms of the visa. *See id.* at 304. The government conceded that the postponement would have been lawful and would not have rendered her deportable. *See id.* Because we considered this an "unintentional injustice[ ] . . . visited upon [a] naive albeit honest alien," we reversed the deportation order under the doctrine of estoppel, without remanding to the BIA for further proceedings. *Id.* at 304, 307. We reasoned that the consular officer's "noncompliance with an affirmatively required procedure" constituted a "severe . . . act of affirmative misconduct." *Id.* at 306-07. Thus, we concluded that "[t]o permit [the petitioner] to be deported,

17

under these circumstances, would be to sanction a manifest injustice occasioned by the [g]overnment's own failures." *Id.* at 307.

Although *Corniel-Rodriguez* limited its holding to the "extraordinary circumstances" before it, *see id.* n.18; *accord Goldberg v. Weinberger*, 546 F.2d 477, 481 n.5 (2d Cir. 1976), the case is materially indistinguishable from the instant case, and we conclude, as discussed below, that Schwebel's exceptional case falls within the "extraordinary circumstances" where equitable estoppel may apply.[5]

---

[5] While we recognize that the doctrine of equitable estoppel against the government has narrowed since *Corniel-Rodriguez*, those cases are not controlling here. *See, e.g., INS v. Miranda*, 459 U.S. 14, 18 (1982) (holding that negligent conduct is an insufficient basis for an estoppel claim against the government); *Drozd v. INS*, 155 F.3d 81, 90 (2d Cir. 1998) ("The doctrine of equitable estoppel is not available against the government except in the most serious of circumstances . . . and is applied with the utmost caution and restraint." (internal citation and quotation marks omitted)); *Ahmed v. Holder*, 624 F.3d 150, 155-56 (2d Cir. 2010) (affirming denial of equitable estoppel claim after petitioner failed to provide "credible" evidence satisfying the elements of equitable estoppel).

In *Drozd*, the petitioner's estoppel claim was "belied by the record" and there was "no evidence that any United States official committed any wrongdoing." *Drozd*, 155 F.3d at 90. In *Ahmed*, the petitioner "introduced no evidence" to support his estoppel claim other than his own inconsistent testimony. *Ahmed*, 624 F.3d at 155. Here, in contrast, Schwebel presented credible and substantiated evidence showing her affirmative steps to apply for adjustment of status and USCIS's inaction, in violation of its mandatory regulation. *See* S. App'x at 12; J. App'x at 380; 8 C.F.R. § 103.2(a)(7).

Finally, in *Goldberg*, this Court clarified that *Corniel-Rodriguez* was limited to its facts, "particularly the fact that the government employee had failed to provide petitioner with a warning mandated by federal regulations." *Goldberg*, 546 F.2d at 481 n.5. Here, we conclude that the government committed affirmative misconduct in failing to provide Schwebel with a notification "mandated by federal regulation[]." *Id.*

18

## 2.    *Application*

Here, Schwebel provided credible and substantial evidence that: (1) USCIS committed affirmative misconduct by failing to follow its own regulations, (2) she reasonably relied on the absence of a rejection or other communication from USCIS, and (3) she was gravely prejudiced as a result.  We address each element in turn.

As a threshold issue, at oral argument, the government contended that the failure to issue a notice here was, at most, negligent conduct.  We disagree.  While it is true that "negligent" conduct is an insufficient basis for an estoppel claim against the government, *Miranda*, 459 U.S. at 18, the government's conduct here exceeds mere negligence.  The government concedes that in 2007, a controlling policy required the agency to issue "manual rejections" in response to prematurely filed applications, like Schwebel's 2007 application.  J. App'x at 371.  Accordingly, in these circumstances, the government's failure to adhere to the 2007 policy exceeded mere negligence.  *See Corniel-Rodriguez*, 532 F.2d at 306-07 ("noncompliance with an affirmatively required procedure" constituted an "act of affirmative misconduct").  To be sure, our conclusion is reinforced by the government's repeated inaction in failing to respond to at least six status

19

inquiries until February 2010 and failure to notify Schwebel of any defect in the filing (despite accepting her medical examination records).

Proceeding to the elements of Schwebel's estoppel claim, first, the largely undisputed facts of this case, in combination with the district court's finding that the agency failed to comply with its controlling regulation, support the conclusion that USCIS committed "affirmative misconduct." *Rojas-Reyes*, 235 F.3d at 126. Schwebel alleges that USCIS engaged in two forms of affirmative misconduct: (1) failing to provide a formal acceptance or rejection of her application, as required under 8 C.F.R. § 103.2(a)(7), and (2) failing to respond to her repeated status inquiries until 2010. We agree that the first element of Schwebel's estoppel claim is satisfied because USCIS's "noncompliance with an affirmatively required procedure" was a "severe . . . act of affirmative misconduct." *Corniel-Rodriguez*, 532 F.2d at 306-07.

Here, the district court found that the government failed to "issue a receipt acknowledging" that Schwebel's application was processed, despite its obligation to do so under 8 C.F.R. § 103.2(a)(7). S. App'x at 5.[6] As relevant here,

---

[6] *See* App. Ct. Dkt. No. 70, Letter from Defendants-Appellants (Dec. 10, 2019) (conceding that 8 C.F.R. § 103.2(a)(7) was in effect in June 2007, but contending that neither the 2007 regulation nor the current regulation requires that USCIS issue a rejection notice).

in 2007, 8 C.F.R. § 103.2(a)(7) required the government to "reject[] [an application] as improperly filed" if it was defective. *See* 8 C.F.R. § 103.2(a)(7) (2007). The government explains that USCIS manually rejected "improperly submitted" applications by returning the application "to either the attorney of record or pro se applicant, with a cover letter explaining the reasons for the rejection (e.g., improper fee amount, lack of signatures, no visa number available)." J. App'x at 371. If Schwebel's 2007 application was in fact premature, then it surely was an improperly submitted application that "should have been manually rejected" by USCIS. J. App'x at 373; *see also* J. App'x at 377 ("USCIS states that under the [2007] policy . . . it should have manually rejected [Schwebel's] case.").

Moreover, the government admits that USCIS received and "generated an '[i]nterfiling' memo" in connection with Schwebel's subsequent medical examination filing, but "did not notify [Schwebel] regarding any defect with the [2007] filing." J. App'x at 378. The government also concedes that USCIS failed to respond to any of Schwebel's repeated status inquiries prior to February 2010.

We conclude that under former 8 C.F.R. § 103.2(a)(7) (2007), inherent in USCIS's obligation to "reject" applications as "improperly filed" is a

corresponding obligation to provide the petitioner reasonably prompt notice of any such rejection. Although the 2007 regulation was silent on its face regarding the timing of the rejection notice, we conclude that the agency was required to provide reasonably prompt notice of rejection, so that an applicant could reapply for adjustment of status. For these reasons, and in light of the district court's finding that USCIS failed to comply with the 2007 regulation, we conclude that USCIS committed affirmative misconduct.

Second, Schwebel relied on USCIS's conduct because she reasonably believed that her 2007 application was being processed after USCIS failed to issue a rejection notification, accepted her medical report without issue, and did not respond to any status inquiry until February 2010. The government concedes that USCIS has no record of Schwebel's 2007 application and no record of the manual rejection it was required to send to Schwebel. USCIS's silence and inaction for the three years following the submission of Schwebel's 2007 application would reasonably suggest that the application was indeed being processed. For these reasons, we conclude that Schwebel reasonably relied on USCIS's inaction in believing that her 2007 application was being processed.

22

Third, Schwebel was prejudiced as a result of this reliance because she was unable to adjust her status. Following the August 17, 2017 filing deadline, an immigrant visa did not become available again until after Schwebel turned twenty-one, thus rendering her statutorily ineligible under the CSPA. In light of the "extraordinary circumstances" here, where Schwebel's application was received by the agency just four days too early, and a visa remained available for another month and a half, the agency should have provided -- and indeed was required by its own procedures to provide -- reasonably prompt notice of the purported defect. If it had done so, Schwebel would likely have been able to resubmit her application within the application period. Because of USCIS's failure to provide reasonably prompt notice, Schwebel suffered great prejudice as she "aged out" of the CSPA by the time another visa period opened. Her parents are now lawful permanent residents, and if the government's failures here are not rectified, there is a possibility that Schwebel will be separated from her family and removed from the country in which she has lived since she was eight years old.

Finally, remand is unnecessary in this case because the district court's findings, in combination with the largely undisputed facts, demonstrate

23

that equitable estoppel applies.  This Court has applied equitable estoppel without remanding for further proceedings after concluding that sufficient evidence in the record existed to demonstrate the government's misconduct.  *See Corniel-Rodriguez*, 532 F.2d at 307 n.19 (concluding that it was "unnecessary to remand for further evidence" based on the petitioner's "uncontradicted testimony" and "inherently credible" account of the facts); *see generally Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93 F.3d 1064, 1072 (2d Cir. 1996) (noting that "remand is unnecessary" where "the facts in the record adequately support the proper result" or "the record as a whole presents no genuine issue as to any material fact").  Here, the undisputed facts are that USCIS failed to issue a rejection notice, despite its controlling regulation, *see* 8 C.F.R. § 103.2(a)(7) (2007); as a consequence, Schwebel was not advised of any defect in her application and she was thus deprived of the opportunity to correct the issue.

Accordingly, we affirm the district court's judgment.  We reiterate that our holding is limited to the exceptional facts of this case, which fall into the "extraordinary circumstances" category described by this Court in *Corniel-Rodriguez*.  532 F.2d at 305.  We further recognize that cases involving similar bureaucratic errors may not necessarily fall under this doctrine.  Nonetheless, in

24

light of the unusual facts of this case, the agency's clear obligation under the 2007 regulation to speak, the agency's silence for three years, and the manifest and gross injustice that would result from the government initiating rescission proceedings to reopen Schwebel's adjustment application to place her in removal proceedings, we are persuaded that equitable estoppel is warranted.

As this Court has observed, a "'fundamental and unquestioned' principle of our jurisprudence [is] that no one shall be permitted to . . . take advantage of his own wrong." *Corniel-Rodriguez*, 532 F.2d at 302 (alteration in original) (quoting *R. H. Stearns Co. v. United States*, 291 U.S. 54, 61-62 (1934) (Cardozo, *J.*)). Permitting the government to initiate rescission proceedings and subject Schwebel to removal would "sanction a manifest injustice occasioned by the [g]overnment's own failures." *Id.* at 307. For these reasons, "basic notions of fairness must preclude the [g]overnment from taking advantage of [its error], and . . . a contrary result would work a serious and manifest injustice." *Id.* at 302.

*CONCLUSION*

For the reasons set forth above, the district court's judgment is **AFFIRMED**.

25